Case number 17-8005, PNC Mortgage Company Appellant versus Donald F. Harker III, Appellee. Oral argument not to exceed 15 minutes per side. Ms. Amelia Bauer for the appellant, you may proceed. Good afternoon. Good afternoon, your honors. May it please the court, Amelia Bauer on behalf of PNC Mortgage Company, I'd like to reserve three minutes of my time, if I may please. You may. We're here to discuss that interesting dilemma called 544A1, trustee's hypothetical powers as a judgment lien creditor and whether the mandate of constructive notice under Ohio law applies to destroy those rights. In our view, the trial court improperly concluded that 544A1 is not subject to constructive avoidances, which unfortunately have been apart for many years, while ignoring the Ohio Supreme Court mandate in the Messer case, interpreting revised code section 1301-401, which was a new statute passed by the Ohio legislature, creating statutory constructive notice. At the same time, Judge Walter decided not to follow two cases. One was the bankruptcy decision in Messer, which followed the certified questions coming out of the Ohio Supreme Court, where Judge Caldwell concluded that 544A1 was in fact subject to constructive notice. An earlier case called Durham, which was Judge Humphrey's decision in the Western District, also concluded that 544A1 powers are subject to constructive notice. In our view, that was the correct decision in that case, which I'll discuss in a moment. Constructive notice, as we know, is a question of state law. 544A1 may be a federal statute, but we get there to constructive notice through state law. Prior to the enactment of 1301-401, Ohio's constructive notice precedent was largely common law. For hundreds of years, courts in Ohio interpreted the concept of constructive notice as a substitute for actual notice and found that, in fact, a bona fide purchaser for value under Ohio law, which is the equivalent of the trustee status under 544A3, would not be subject to constructive notice unless facts were ascertained to create notice on behalf of a BFP. That's what this court decided in the Periandery case back in 2001, that, in fact, a trustee exerting his 544A3 rights is subject to constructive notice. What follows BFP status in Ohio is the question of what role a judgment lien creditor has. As a bona fide purchaser, a bona fide purchaser is entitled to rely on the recording statutes to challenge a mortgage. Those are the cases upon which Judge Walter relied below. In fact, the cases all dealt with mortgages being challenged by other mortgagees who are, as a matter of law in Ohio, bona fide purchasers, but they didn't deal with judgment lien creditors because, in fact, there aren't very many of those cases because judgment lien creditors in Ohio are not bona fide purchasers.  Because they're not bona fide purchasers, they don't get the benefit of attacking a recorded instrument that may or may not be defective under 530123A. In fact, they take the position they take when their lien is filed. As of the date of the petition filing here, we interpret 544A1 and the hypothetical lien of the trustee to take effect on the date a petition is filed. On that date, following common law in Ohio, without regard for 1301401, we would have to conclude that our mortgage would be superior in interest to the hypothetical lien of the trustee. We look at the cases relied on below and some of the cases relied on in the briefing here. What jumps out at us is two things. One is, as I said, the cases look at whether mortgagees can challenge another mortgage that's defectively executed. The 100-year-old answer to that question in Ohio is absolutely yes. The cases cited by the trustee here in his briefing talk about older cases that not only predate 1301401, most of which also predate the Perriandi decision, which recollection serves was decided in 2001. Those cases deal with judges who avoided mortgages under 544A1 where no issue of constructive notice was raised and no issue was raised according to the law of Ohio that a judgment lien creditor cannot be a bona fide purchaser, which is the only way you get to strip a mortgage. Nonetheless, those cases exist. Whether or not they were properly decided at the time is a moot issue because we've now changed the law. But regardless, when it came down to deciding this case, what I had suggested to the trial court was because Messer was pending, we would hold the decision. Of course, then when Messer came out and the court ruled that constructive notice applies to any recorded mortgage, even those that are deficiently executed, I asked the court to follow the result in Messer, both from the Ohio Supreme Court, which is the mandate that all bankruptcy courts follow, and also the bankruptcy court decision in Messer, which I believe is an accurate reflection of Ohio law. We're here obviously because trial court and I didn't agree on that point. But in addition to 1301401, and what I believe is a mandate from the Ohio Supreme Court that all of us must follow, we now have an interesting dilemma because since this case has been pending, the Ohio legislature has now passed a curative statute, 530107C3, which says any mortgage that's a record for more than four years is cured of any defect in its execution. So if we follow the rule that when we decide a case, the law in question at the time of the decision is to hold, I would suggest, though I'm not asking you to do this, that even if the trial court, bankruptcy court, were not reversed here, if we would go back and the adversary case is pending because we're here on a motion to dismiss, we turn around and file a motion for summary judgment and assert 530107C3 and say, unfortunately, Mr. Trustee, the Ohio legislature has finally cured this problem we have with blank acknowledgments and I don't believe that you can survive under any provision. Without getting to the merits of what I'll call the new statute, didn't the trustees' rights, such as they were, vest in this case upon the filing of the petition? Yes, that's correct. No matter when an adversary proceeding might be filed or remanded or the like? Yes, but keep in mind that 530107 is retroactive as a matter of the operation of the statute. It's within the statute. We had this issue come up, judge-wise, I believe it was in 2002 in a case called Noland where a prior statute, 5301234, was deemed, eventually to be deemed unconstitutional by the Ohio Supreme Court. It was the statute that cured the number of witnesses on a mortgage. In that decision, I don't want to presume it was the Sixth Circuit or if it was the regardless of when the mortgage was filed and when the petition was filed, the law is what it is and if it's retroactive, it can apply to, in that case, the mortgage and coexist with Ohio's recording statute. But there's a limit on retroactivity in this new statute, is there not? There is no limit on retroactivity in the statute. If I remember correctly, the statute is open-ended on retroactivity. I don't think it has a beginning or ending date. The reason the legislature did that is because it's a remedial statute. I have it in my brief so I shouldn't speak from memory, judge-wise. The legislature knew this is a remedial statute similar to 5301234 and so retroactivity would kick in. I would suggest that that issue on retroactivity is also now before the Supreme Court of Ohio on two certified questions from this court in a case called In re Vodrick Perry. But the import of 530107 here doesn't, in my view, affect the substantive result here. I think the substantive result here is resolved by 1301401 in the Supreme Court mandate in December. I don't think we get to 530107 unless we go back to the trial court. But I think I would be remiss not advising this court that the statute does exist. I do think it applies, but I don't think we have to get there. If I could go back to the retroactive nature of this, I'm looking at, I think it's your brief where it's 530107G that says the statute is given retroactive effect to the fullest extent permitted. But then it says this section would not give any retroactive effect if to do so would affect any accrued substantive right or vested right in any person or in any person or in any real property instrument. So it sounds like it's stepping back from that. So if we take Judge Wise's question that don't the rights, aren't they determined the day of the petition, this statute was passed after the date of the petition, if I remember the timing correctly. Yes. That's absolutely correct. In fact, the statute was passed in April of this year, enacted, after we'd gone through the briefing. And I believe the briefing was completed in this case at the time the statute was passed. But on the retroactivity issue, which again, I don't think is our main argument, I think what the statute is telling us, first of all, it's following Ohio law in the Van Fossen case decided by the Ohio Supreme Court, which deals with when a statute is retroactive and when it's not. So I believe that while the statute is retroactive and would affect the trustee's rights as of the date of the filing of the petition in this case, because that's what the statute says. And I also think it doesn't affect a substantive right because the right asserted by the trustee is not one of substance, it's his remedy to which he would be entitled under 544A1. And again, the Supreme Court may decide that question when we get to Vodrick-Perry. I don't necessarily think that issue is before this court today. I think we get a resolution of this court under 1301-401. And I would urge the court to reverse the decision of the trial court. If there are no other questions, I'll reserve my time. The lower court here focused on the difference between A1 and A3. The difference between a judicial lien creditor and a BFP. And spoke in terms of priority versus notice. Priority being the linchpin, if you will, of the rights of a judicial lien creditor under 544A1. How do you deal with the priority issue and that part of the bankruptcy court's opinion? I heard a lot about notice, but I didn't hear any specific criticism of that, if you will. My criticism of that is, this is what we call the first-in-time, first-in-right rule, or the race notice statute in Ohio. And again, because a judgment lien creditor is not entitled to BFP status between itself and another judgment lien creditor, the race to file at the clerk of court's office would determine priority between judgment lien creditors. Similarly, under 530123A, the race to file at the recorder's office would determine priority between mortgagees, right? But the problem is, we can't cross-pollinate. So the race to file a judgment lien and the race to file a mortgage are two separate actions. Because that judgment lien creditor is not entitled to rely on the recording statutes to say, wait, I got there first. Amy, your mortgage is no good, so I win. They can't attack me, right? And so, because of that, I think that's a common misperception in the law, and I frankly call it, analogize it to a class setup. Classes of creditors, judgment lien creditors, are in one side, classes of mortgagees are on another side. They don't cross each other, because they can't as a matter of law. Thank you, Ms. Bower. Thank you. Good afternoon. Good afternoon, your honors. Diane Marks, on behalf of the trustee, Donald Parker. I think that this case has gotten convoluted, and I think Judge Walter did an excellent job of just breaking down what's going on here.  This is a case where the court did look at 1301.401, and rightly called that statute, which was passed in 2013, a constructive notice statute, because that's exactly what it is. It's a constructive notice statute. This is a situation where the Ohio legislature was trying to fix, stop, whatever you want to say, a lot of the defective, executed mortgage situations. They passed the statute, but unfortunately, they didn't do the kind of job that perhaps they should have done, because it does only pertain to constructive notice. As Judge Walter went through, and you can see this in a very detailed analysis of Ohio law, went through painstakingly and cited the cases that showed that notice is in completely irrelevant consideration dealing with judgment lien creditors. It has nothing to do with judgment lien creditors. There's Ohio authority on that. It's replete in Ohio law. In fact, I would posit that the Ohio legislature recognizes that, and that's why they, in pretty much record time, remember Messer was decided, the two certified questions, was decided in 2016. We have on April 6th of 2017 this new statute, which is not a remedial statute, 5301.07, which says we will now give to anything that's recorded a rebuttable presumption of validity. It's there. Let's just keep it there, and let's give some certainty, unless there's fraud or something like that. That statute is going to head off, prevent a lot of these judgment lien creditor situations as well. It also says if it's been filed for four years, this is, again, the new statute. If it's been filed for four years, there is this presumption, and it's probably going to stick. Now, what's that mean as a practical matter? As a practical matter, there are very limited cases right now that are going to fall into this area. This particular case obviously does, because it was a 2013 petition filing. This new statute, as I think the court is recognizing, should not be given retroactive treatment in this case, because it very clearly accepts out if it's a substantive accrued right or a vested right, which is exactly what we've got here. Counsel, what do you say about your opponent's argument that you can't cross a judgment lien analysis, if you will, with a mortgagee analysis? I'm a little confused by that. Do you have anything to add? I don't know how to respond to that, to be perfectly honest with you, Judge Wise. I only know that Ohio law has long recognized that constructive notice only applies to a BFP. It does not apply to a judgment lien creditor. That is the law in Ohio, and that's very clear. Under Ohio law, a filed judgment lien creditor would take precedence over an unrecorded mortgage. Is that correct? Yes. You have a situation as well where, yes, Judge Caldwell did take in remesser and did obviously issue a decision, but as Judge Walter noted in his footnote, it is, quote, a limited decision without citation to Ohio case law. Judge Caldwell looked at messer and said, we'll apply it to A1 and A3. Again, there's no citation to Ohio authority. Judge Walter was very cognizant of that. Judge Walter cited, in his opinion, one of his decisions was In re Gibson, which was decided by Judge Preston, I believe out of Columbus. In that case, Judge Preston, again, reviewing Ohio law, as did Judge Walter, held that neither the bankruptcy code nor Ohio law requires that a judgment creditor have the same attributes of a bona fide purchaser as it pertains to notice of a prior interest. Neither requires a judgment creditor to lack notice of an unrecorded or defective lien in order to obtain a superior lien on a judgment debtor's property. This is, I think, an important decision, and I think you'll see a number of cases cited in the brief of the appellant, In re Durham being one of them. In re Durham and then Periandry, if I'm saying that correctly, which is the 2001 Sixth Circuit BAP decision. Those cases, your honors, if you read them, are Liz Pendon's cases. And they really don't have anything to do with what we're talking about here. As the Ohio Supreme Court noted, and it's cited on page 15 of the trustee's brief, it's a 2009 case. Liz Pendon's is not founded upon notice, but it's founded upon public policy, founded upon necessity. The whole line of Liz Pendon's cases, which seem to give some credence to the argument of the appellant, are simply not applicable in this situation. You take away the Liz Pendon's cases, and then the other cases that are cited are frankly outside of the state of Ohio. You've got to stay within the state of Ohio, like it or not. That's where we are. You remove those cases, you deal with Ohio law, you disregard the Liz Pendon's cases, and then there's another category in there. And this is also discussed in the brief, and you'll see it in, it's a case called Acacia, A-C-C-A-C-I-A, if I'm correct about that. And that is a court of appeals case in Ohio. And that case notes that there is a distinction between a defectively executed mortgage case and those with a land description. That's another exception that we make. So it's kind of like the Liz Pendon's. So again, I would encourage the court to be cognizant of the Liz Pendon's line of authority, to be cognizant of the defective deed cases, which are not the same as a defectively executed mortgage case, which is what we have here, and to look at Ohio law. And I think looking at Ohio law, it's very clear that this is the law of Ohio, as noted by, again, Judge Walter and Judge Preston. Until the Ohio legislature changed the statute recently, right? Very recently, yes. And I would suggest that it was in response to the recognition that Messer only dealt with constructive notice, and constructive notice only dealt with a BFP. So oh no, if we're going to get the mortgage situation in line and the recording in line in the state of Ohio, we need to do something. And that's exactly what they did when they, in really fairly record time for a state legislature, passed this new law, this 5301.07 on April 6th of 17th. So using the legal maximum, if it's not broken, don't fix it, the Ohio legislature must have seen something broken because they decided to fix something, right? They felt, in my opinion, such as it is, that 1301.401 didn't go as far as they intended it to. I'm troubled by the Messer Bankruptcy Court opinion. How did the court get so far afield from your view? Because it's very clear that not only is the 544A3 claim also 544A1 claim. How did they make that big jump from your viewpoint? I can't answer that effectively, any more effectively than Judge Walter did when he read that decision and decided, you know, with all due respect, it's a limited decision without citation to Ohio case law. I see it. I acknowledge it. And this is what I'm going to do based upon my reading, my detailed reading of Ohio case law, which is the same thing that was done by Judge Preston and In re. Gibson. I want to back up to the retroactive affected. I understand the statute correctly that the, if you take the assumption that the trustee had a lien creditor right when the case is filed, then that statute should be read to preserve that right and can't be given retroactive effect. Is that correct from your viewpoint? That is correct, Your Honor. And that is actually, again, Judge Walter looked at that as well and he said, well, we've got this new statute out here as I'm writing this opinion, this 12-, 13-, 14-page opinion as I'm writing this, I see this new statute out here and looking at this statute, well, it doesn't really apply anyway, is pretty much what he said. He did not go through the analysis, but I think if you go through the analysis and you see very plainly, as I think Judge Wise noted at the bottom, it says this shall not affect a substantive accrued right or a vested right. And that's exactly what is the case here with the trustee's claim under 544-A1. Is that kind of right not a right that creates a remedy as argued by Ms. Bower, is that your understanding? I'm sorry, Your Honor. So this statute creates a substantive right, not just a remedy. It affects a substantive right. It affects a vested right. It is not a remedial statute. It does not want to practice or procedure like witnesses to a mortgage. This is a substantive right for the strong arm powers under 544-A1. Thank you. I don't have anything else. I don't think we have any further questions, so thank you. Thank you, Your Honor. You're welcome. Ms. Bower, I know you reserved some time, so go right ahead at your convenience, please. Thank you. I'm constrained to point out that it is absolutely not true that 1301-401 and Messer do not apply to 544-A1. A judgment lien creditor in Ohio is not a bona fide purchaser as a matter of law. Therefore, they can't get a higher status than BFP. They're below BFP. Constructive notice, as designed by the statute, affects a judgment lien creditor. Judge Humphrey was right about that. Let's talk about Gibson for a minute. Both Gibson and Durham involved mortgages that were filed with affidavits. The issue of constructive notice wasn't raised in Gibson. That was my case, by the way. I did raise the judgment lien BFP issue. I didn't prevail there. When it came to Durham, Judge Humphrey correctly recognized, following periandry, that constructive notice applies, and so the trustee was on notice. He specifically found that would affect 544-A1 rights. Judge Caldwell was not out in the weeds somewhere when he followed Messer. 544-A1 is a constructive notice statute that applies to BFPs because they have the highest status. It also applies to judgment lien creditors because they cannot take advantage of our recording statutes to attack a mortgage. Even if we didn't have 1301-401, they couldn't do that. In response, Judge Wise, to the dilemma I presented to you on judgment liens and mortgages and confusion, I would direct the court's attention to Basil v. Vincello, which is the Ohio Supreme Court case cited in my brief where the court held that judgment lien creditors are not modified purchasers for value. It's specifically on page 191 of the decision where the court talked about judgment lien We don't have either there. We have a judgment lien attacking a deed and a mortgage question, and the court found that the judgment lien creditor couldn't take any priority because of the equitable interest of the grantee under a deed. Finally, counsel suggested that the trial court decision was replete with cases talking about why 544-A1 is not affected by constructive notice. I would respectfully disagree. The cases cited by the bankruptcy court are McElroy, which is the issue of an unrecorded mortgage that didn't have anything to do with a judgment lien, Odita, which is a defectively executed mortgage that had nothing to do with a judgment lien, the Ohio Supreme Court case in Denison, which is cited in Messer, which deals with a defectively executed deed, and the Acacia decision, which dealt with, again, legal descriptions and mortgages. This notion that this idea that defectively executed mortgages somehow survived 1301-401 is simply incorrect, and I would urge this court to reverse the decision of the trial court. Thank you. You're welcome. Thank you, Ms. Bauer. We'll take the matter under advisement, and thank you, counsel, for an excellent argument today.